*In re* Héctor Tormos Blandino.

*Número:* AB-92-121      *Resuelto:* 28 de marzo de 1994

*Reina Colón de Rodríguez, Procuradora General Interina, Iván F. Fuster Lebrón, Procurador General Auxiliar*, abogados de El Pueblo; *Héctor S. Tormos Blandino, pro se.*

PER CURIAM: A. Mediante Sentencia de 13 de julio de 1992, resolvimos los recursos gubernativos CE-86-230 y CE-86-231, *Juan Crispín Jorge*, recurrente, *v. El Registrador de la Propiedad, Sec. II, San Juan*, recurrido.

Con vista a los pronunciamientos en esa sentencia y a los datos que surgían de los autos del Caso Civil Núm. 83-6096, *Miguel Crispín Jorge y otros*, demandantes, *v. Juan Crispín Jorge*, demandado, ordenamos a la Oficina del Procurador General una investigación sobre la conducta profesional del Lcdo. Héctor S. Tormos Blandino y que nos rindiera un informe con sus recomendaciones.

En su informe de 13 de agosto de 1993, el Procurador General expone que el licenciado Tormos Blandino incurrió en conducta impropia violatoria de los Cánones 33 y 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

Por su parte, en su comparecencia a una orden de mostrar causa por la cual no debía ser disciplinado, el licenciado Tormos Blandino insiste en que actuó correctamente; argumenta de nuevo en favor de la causa de su cliente Juan Crispín Jorge, la cual se finalizó y adjudicó en su contra; nos pide que revoquemos una resolución judicial, y que validemos un Certificado de Compraventa de Bienes Inmuebles, una escritura pública y ordenemos al Registrador de la Propiedad reinscribir el Expediente de Dominio.

■ De entrada, es evidente la improcedencia de sus argumentos, los cuales pretenden revivir y revisar dictámenes judiciales finales y firmes. Sus pedidos son a destiempo, por lo cual reproducimos nuestra Sentencia de 13 de julio de 1992:

I

Claudiano (t/c Claudio) Crispín Serrano era dueño de una finca rústica en el Barrio Caimito de Río Piedras. Durante los años 1928 al 1936, no pagó las contribuciones y acumuló una deuda ascendente a $102.66.

Por tal razón, el 10 de noviembre de 1937, mediante pública subasta celebrada en la Colecturía de Río Piedras, la finca fue adquirida por Luis Ubarri. No estaba inscrita en el Registro de la Propiedad. El 6 de abril de 1938, el Colector de Rentas Internas emitió el correspondiente *Certificado de Compra de Bien Inmueble* a favor de Ubarri. Consignó una cabida de seis punto cinco (6.5) cuerdas. Ubarri no la inscribió.

En 1949 Ubarri, mediante contrato privado, alegadamente la vendió a Juan Crispín Jorge, hijo de Claudiano. Al Juan percatarse de que no estaba inscrita, le solicitó a Ubarri que ambos efectuaran las gestiones pertinentes conducentes a ese fin. No es hasta muchos años después, que Ubarri, mediante el Afidávit Núm. 736 de 12 de diciembre de 1983 —otorgado ante el notario Segilfredo Puente Castro— y el Afidávit Núm. 782 de 23 de abril de 1984 —otorgado ante el notario Reyes Vigo V[e]lázquez— declara que, en o alrededor del mes de julio de 1949 cedió, vendió y traspasó todos sus derechos en dicha propiedad a favor de Juan. Además, para darle autenticidad a la supuesta compraventa, ambos comparecieron ante el notario Puente Castro y otorgaron la Escritura Núm. 2, en la que formalizaron y ratificaron dicho negocio. En este documento aclararon que la cabida correcta era de 26,443.2513 m.c., equivalentes a 6.7279 cuerdas; una diferencia nominal de 0.2279 partes de una cuerda a la del *Certificado* del Colector de Rentas Internas.

Para inscribirla a favor de Ubarri, el 10 de septiembre de 1985 se presentó en el Registro de la Propiedad, Sección II, San Juan, dicho Certificado de Compraventa y la Escritura Núm. 2.

El 19 de febrero de 1986, el Registrador de la Propiedad (Hon. Ángel González Román) denegó la inscripción de ambos documentos. Adujo como faltas:

"1.    En el certificado de compra, no se expresa las circunstancias personales del comprador. (Art. [sic] Royal Bank of Canada [v. Registrador,] 104 DPR 400 [1985] y Art. 68 de Ley [Hipotecaria])

2.    a. y en la esc. #2, tanto el vendedor como el comprador comparecen casados, y no se expresa con quiénes así como tampoco comparecen las esposas. Art. 68 Ley Hip. y Art. 80.2 Regl. Hip.

b.    El documento [Escritura Núm. 2] incluye una nueva descripción de la finca, de la cual resulta una mayor cabida sin que se cumplan con los requisitos de ley para una rectificación de cabida. (Art. 68, Ley Hip. y Art. 247 Ley Hip.)."

Ante una oportuna recalificación, el 21 de marzo reiteró su denegatoria.

Inconforme Juan, el 9 de abril de 1986, presentó dos recursos gubernativos (CE-86-230 y CE-86-231). En el primero cuestiona la falta sobre no constar en el *Certificado* las circunstancias personales de Ubarri y, en el segundo, discute los señalamientos en torno a la Escritura Núm. 2.

Por razones obvias, para fines decisorios los hemos consolidado.

## II

No tenemos que penetrar en los méritos de esos señalamientos. El 30 de diciembre de 1987 nos fue referida una Resolución dictada el 29 de diciembre por el Tribunal Superior, Sala de San Juan (Hon. Juez Nellie Ortiz Torres), en el pleito sobre división de herencia (*Miguel Crispín Jorge y otros*, demandantes v. *Juan Crispín Jorge*, demandado, Civil Núm. 83-6096(905)). *La misma expone unos hechos dramáticos que inciden sustancialmente sobre las instancias registrales.* Allí se concluyó que el 27 de marzo de 1985 —aproximadamente cinco (5) meses *antes* de presentarse ante el Registrador los documentos para inscribir la finca a favor de Ubarri, y luego, a Juan— se *decretó la nulidad* del dictamen emitido en el procedimiento de información de dominio (Civil Núm. 80-6324) que dio lugar a que se pretendiera inscribir la propiedad a nombre de Juan.

Específicamente surge que mientras se sustanciaban los procedimientos en el referido caso de *Miguel Crispín Jorge y otros*, demandantes, v. *Juan Crispín Jorge*, demandado —Civil Núm. 83-6096(905) sobre división de herencia— el 15 de diciembre de 1985, el Lic. Héctor S. Tormos Blandino, representante legal de Juan Crispín Jorge, presentó, como parte de una acción de expediente de dominio (Civil Núm. 66-904) incoada para determinar quién era el dueño de la finca, una moción solicitando el desglose de los documentos sometidos en evidencia durante la Conferencia con Antelación a Juicio.[1] Precisamente, uno de los documentos solicitados fue el original del *Certificado de Compra de Bien Inmueble*. El 4 de enero de 1984, se autorizó al Lcdo. Tormos Blandino a retirar del expediente los documentos solicitados sin que *antes* se fotocopiaran. Para fortuna de la dama de la Justicia, el anverso y el reverso de dicho documento fue *descrito en su totalidad* en la Conferencia con Antelación al Juicio, y a la fecha de su celebración —5 de septiembre de 1968— había *una sola nota al dorso* de la certificación que leía:

"Recibí de Claudino Crispín la cantidad de $114.98 como pago de mi remate a la finca de su propiedad efectuado el 10 de noviembre de 1937. Luis Ubarri [firma]."

No es necesario elucidar la importancia de esa nota: consti-

---

[1] Cabe señalar que la acción sobre expediente de dominio (Caso Civil Núm. 66-904) fue promovida por Claudiano, padre de Juan. El caso no se vio en su fondo. Las partes informaron al tribunal de instancia que habían llegado a una estipulación que presentarían en autos posteriormente. Nunca se hizo y se archivó por abandono.

No obstante, se había celebrado previamente la aludida Conferencia con Antelación al Juicio durante la cual se sometió, como parte de la prueba, el *original* del *Certificado de Compra* emitido por Hacienda en 1938.

tuía un reconocimiento de Luis Ubarri a los efectos de que Claudino Crispín Serrano ejercitó el derecho a *redención de la finca*.

*No obstante esa realidad, cuando se suscitó el procedimiento sobre información de dominio* (Civil Núm. 80-6324), curiosamente se le había adicionado al *Certificado* una *segunda* nota, mediante la cual Luis Ubarri alegadamente vendía a Juan.

Ante esa evidencia contundente, el tribunal de instancia, en la Resolución de la acción de división de herencia (Civil Núm. 83-6096), concluyó que se había perpetrado un fraude, pues esta segunda nota se había adicionado *con posterioridad* al desglose solicitado por el Lcdo. Tormos Blandino. Por ser reveladores, transcribimos los párrafos de la Resolución del caso civil Núm. 83-6096 pertinentes:

"El fraude cometido lo fue, a nuestro juicio, en sus dos modalidades tanto para con los demandantes miembros de la Sucesión Crispín Jorge como para con el Tribunal puesto que para la fecha de la alegada venta (1949), cesión y traspaso privado entre Luis Ubarri y Juan Crispín Jorge, la finca estaba siendo poseída, alegadamente, por el causante [Claudiano Crispín Serrano] del aquí demandado [Juan Crispín Jorge] desde 1920, en adición al hecho de que el causante reclamaba ésta como de su propiedad privativa ....

Se ha traído a nuestra atención, luego de dictarse Sentencia en este caso, que la parte demandada procedió en 10 de septiembre de 1985 a presentar al Registro de la Propiedad de Río Piedras Sur, Certificado de Compraventa emitido por el Secretario de Hacienda en 6 de abril de 1938. *El Certificado sometido al Registro de la Propiedad no es el original puesto que éste aún forma parte de los autos de este caso*. En adición, presentó Escritura #2 otorgada en San Juan a 27 de enero de 1984 ante el notario Segilfredo Puente Castro mediante la cual se ratifica alegadamente una venta, cesión y traspaso de la finca que nos ocupa por Don Luis Ubarri, a favor de Juan Crispín Jorge; todo ello a fin de lograr la inscripción de la finca objeto de esta acción a favor de Juan Crispín Jorge....

Atendido lo antes relacionado, el Tribunal por la presente ordena al Señor Registrador de la Propiedad de Río Piedras Sur para que *se abstenga de efectuar inscripción alguna de dicha finca a favor de Juan Crispín Jorge apoyada en* los documentos referidos o en cualesquiera otros originados en los documentos antes relacionados. Declara nulo, sin efecto alguno y ordena al Señor Registrador para que cancele cualesquiera asiento en los libros del Registro efectuado a favor de Juan Crispín Jorge con relación a dicha finca y le ordena en su lugar para que proceda a la inscripción de dicha finca a favor de los miembros de la

Sucn. de Claudiano Crispín Serrano entre los cuales se encuentra el aquí demandado, Juan Crispín Jorge." (Énfasis suplido.)

### III

Los derechos y obligaciones adjudicados en el ámbito judicial, mediante dictamen firme, constituyen la *ley del caso*, no revisable en un recurso gubernativo. *U.S.I. Properties, Inc.* v. *Registrador*, res. en 30 de junio de 1989, 124 D.P.R. [448] (1989), 89 JTS 66.

La existencia aquí del dictamen final y firme aludido, *antes* de presentarse al Registro los documentos que nos ocupan —en que se probó que la finca se redimió, y judicialmente se negó el derecho pretendido de Juan— son fundamentos válidos para *confirmar*, sin más examen, las negativas del Registrador. (Énfasis suplido y en el original.) Sentencia de 13 de julio de 1992, págs. 1–6.

B.   El informe del Procurador General no le imputa al licenciado Tormos Blandino haber gestionado ni instigado que se escribiera la segunda nota al dorso del documento. Aparentemente el Procurador General da crédito a su versión de que "al confrontar al señor Ubarri al respecto, éste último le expresó que 'eso no era así' y acto seguido le arrebató el documento de sus manos y escribió la segunda nota". Informe, págs. 2–3. *Para fines decisorios partimos de esa apreciación.*

Aun así, la comparecencia del querellado Tormos Blandino no nos convence. En su declaración jurada ante el Procurador General, admitió que presentó unos documentos en el Registro de la Propiedad el 6 y 21 de marzo de 1985, es decir, con anterioridad a la sentencia dictada el 27 de marzo de 1985. Entre esos documentos estaba el Certificado de Compra de Bienes Inmuebles, aun cuando le constaba que era objeto de disputa judicial.([2])

---

([2]) Declaró que actuó así porque " 'creía fehacientemente conforme al derecho notarial y el derecho de registración (sic) de propiedad, la ley hipotecaria y su reglamento que no existía tal derecho de herencia' en el Caso 83-6096 ... siempre entendió que la sentencia a dictarse en su día en el caso 83-6096 habría de ser favorable, a su cliente' ". Informe, pág. 4.

■ Esa conducta del querellado infringió el Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, pues el abogado "debe evitar hasta la apariencia de conducta impropia". Independientemente de su criterio profesional, no debió presentar al Registro de la Propiedad los documentos en controversia en el Caso Civil Núm. 83-6096, sobre División de Herencia, máxime cuando se dilucidaban los méritos del Expediente de Dominio Núm. 80-0324.

El querellado Tormos Blandino admitió que los presentó al Registro de la Propiedad *antes* de que se dictara la sentencia en el Caso Núm. 83-6096. No obstante, la investigación del Procurador General reveló que una vez dictada esa sentencia —ordenando la cancelación de la inscripción a favor de su cliente y declarando nulo el proceso seguido en el Expediente de Dominio en el Caso Civil Núm. 80-6324— procedió a presentar ante este Tribunal los dos (2) recursos gubernativos ante las notas denegatorias de inscripción decretadas el 21 de marzo de 1986 por el Registrador de la Propiedad. Al presentarlos, le constaba que se había ordenado la inscripción del inmueble a favor de todos los miembros de la sucesión.

La presentación de estos recursos gubernativos para defender una inscripción *inexistente* en el Registro de la Propiedad infringe el deber de sinceridad para con este Tribunal. Canon 35 del Código de Ética Profesional, *supra*.

Su excusa de que lo hizo por entender que las disposiciones de ley que rigen en la Ley Hipotecaria y del Registro de la Propiedad y su reglamento, junto al Código Político, "están divorciados de otros procedimientos en ley", es sumamente socorrida. Al decretarse la nulidad del expediente de dominio en el Caso Civil Núm. 80-6324 y ordenarse la cancelación de la inscripción que existía a favor de su cliente Juan Crispín Jorge, no había razón válida alguna de continuar adelante para lograr una inscripción a favor de una persona cuyo derecho había dejado de existir por decreto judicial.

En resumen, *concluimos que Tormos Blandino violó los Cánones 38 y 35 del Código de Ética Profesional, supra, respectivamente. Ese proceder no sólo es censurable, sino que conlleva suspenderlo de la abogacía por el término de seis (6) meses.*

*Se dictará la correspondiente sentencia.*

Los Jueces Asociados Señores Rebollo López y Fuster Berlingeri no intervinieron.