ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ISLA VERDE HOLDINGS, LLC<br><br>Peticionarios<br><br>v.<br><br>GOLDEN DEBT, LLC; GOLDEN RE, LLC; DAVID EFRÓN, EFRÓN DORADO S.E., LLC; PDP HOLDINGS, LLC<br><br>Recurridos<br><br>RAMÓN CALDERÓN, HOLSUM OF PUERTO RICO, INC., PUEBLO, INC.<br><br>Peticionarios | KLCE202301301 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm. DO2018CV00096<br><br>Sobre: Incumplimiento de contrato, solicitud de cumplimiento específico, dolo contractual; daños y perjuicios; en la alternativa, *culpa in contrahendo*; daños y perjuicios *ex contractu* |
|---|---|---|

Panel integrado por su presidenta, la Jueza Romero García, el Juez Monge Gómez y la Jueza Díaz Rivera[1].

Monge Gómez, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 29 de enero de 2024.

Compareció la parte peticionaria, Isla Verde Holdings, LLC (en adelante, "IVH") y el Sr. Ramón Calderón Rivera, Holsum of Puerto Rico, Inc. y Pueblo, Inc. (en adelante, "Terceros Demandados") (en conjunto, los "Peticionarios"), mediante petición de *certiorari* presentada el 21 de noviembre de 2023. Nos solicitó la revocación de la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, el "TPI"), el 25 de mayo de 2023, notificada y archivada en autos al día siguiente. Dicho dictamen fue objeto de una solicitud de reconsideración interpuesta por los Peticionarios, declarada "No Ha Lugar" mediante *Resolución* de 23 de octubre de 2023, notificada y archivada en autos en la misma fecha.

---

[1] Mediante la Orden Administrativa OATA-2024-005, se designó a la Hon. Karilyn M. Díaz Rivera, en sustitución del Hon. Abelardo Bermúdez Torres, para entender en los méritos el recurso de epígrafe.

Número Identificador
SEN2024_____

Por los fundamentos que expondremos a continuación, *expedimos* el auto de *certiorari* y *confirmamos* la *Resolución* apelada.

**I.**

El presente recurso se originó el 27 de julio de 2018, con la presentación de una "**Demanda**" por parte de IVH en contra de Golden RE, LLC. y Golden Debt, LLC (en adelante, "Golden RE" y "Golden Debt", respectivamente, y, en conjunto, "Golden" o los "Recurridos"). Arguyó que los Recurridos se rehusaron a efectuar sus prestaciones como parte de un contrato de compraventa, mediante el cual Golden acordó venderles cierto inmueble. Por tanto, IVH acumuló dos causas de acción: (1) cumplimiento específico de contrato y (2) los daños y perjuicios resultantes del presunto incumplimiento. En su defecto, solicitó una indemnización por daños bajo la doctrina de culpa *in contrahendo*.

Tras múltiples trámites procesales, el 23 de septiembre de 2019, Golden presentó una "**Demanda contra Terceros**" en contra de Pueblo, Inc., Holsum de Puerto Rico, Inc., y del Sr. Ramón Calderón Rivera (en adelante, "Pueblo", "Holsum" y el "señor Calderón"), en la cual solicitó que se descorriera el velo corporativo de IVH, en aras de imponerles responsabilidad por los daños reclamados en cierta "**Reconvención**", presentada el 9 de octubre de 2018. Mientras tanto, IVH presentó "**Demanda Enmendada**" el 9 de octubre de 2020. Allí, acumuló como parte codemandada a Efrón Dorado, S.E. (en adelante, "EDSE"), al Sr. David Efrón, Green Family Bridgehampton, LLC. y PDP Holdings, LLC. En lo pertinente a la controversia ante nos, solicitó que se descorriera el velo corporativo en cuanto a Golden y EDSE para responsabilizar al señor Efrón en su capacidad personal. Sostuvo que éste utilizó a EDSE y a Golden como su *alter ego* para provocar, entre otras cosas, que no se cumpliera con el contrato entre IVH y Golden para la adquisición de la propiedad objeto de dicho contrato.

Así las cosas, el 10 de marzo de 2021, EDSE presentó "**Moción de Desestimación (Impedimento Colateral)**". Esgrimió que debido a que el

foro primario había determinado que no existía una relación contractual entre Golden RE y IVH, relación de la cual dependían las causas de acciones alegadas en la "**Demanda Enmendada**", procedía desestimar la misma. Añadió que era improcedente descorrer el velo corporativo, a raíz de la inexistencia de un contrato entre éstos, pues con quien había negociado era con Golden.

De igual forma, el 11 de marzo de 2021, el señor Efrón y Golden Debt presentaron sus respectivas mociones de desestimación. El primero adoptó y reiteró los argumentos expuestos por EDSE en su moción. Mientras que Golden Debt sostuvo que el caso se tornó académico de su parte, por lo que estaba impedido de cumplir con lo requerido en la "**Demanda Enmendada**". Ello puesto a que había dejado de ser el poseedor de las hipotecas que gravaban la propiedad objeto de compraventa.

El 5 de mayo de 2021, IVH presentó sus respectivas oposiciones a las mociones de desestimación. Luego de evaluar las mismas, el foro recurrido emitió *Sentencia Parcial* el 21 de abril de 2023, notificada en misma fecha. En cuanto a la solicitud de desestimación de la causa de acción para descorrer el velo corporativo interpuesta por EDSE y el señor Efrón, el foro *a quo* concluyó que la misma fue instada prematuramente por IVH. Expuso que, para que procediera la misma, debía haber una sentencia en contra de la corporación que estableciera una deuda u obligación y que dicha sentencia no hubiese podido ejecutarse después de tres (3) años, en virtud de lo establecido en el Artículo 12.04 de la Ley Núm. 164-2009, según enmendada, conocida como la "Ley General de Corporaciones", 14 LPRA sec. 3784. Debido a que al momento de dictar la *Sentencia Parcial* no se había emitido ninguna otra sentencia a favor del demandante que estableciera una obligación o deuda por parte de EDSE y el señor Efrón, y que ameritare que se pudiera descorrer el velo corporativo, desestimó, sin perjuicio, dicha causa de acción acumulada en la "**Demanda Enmendada**".

Aclaró que, aunque Golden no había solicitado la desestimación de ésta, su interpretación le era extensiva bajo el mismo razonamiento.

A la luz de dicha determinación, el 4 de mayo de 2023, los Terceros Demandados presentaron, de manera individual, sus respectivas mociones de desestimación de la "**Demanda contra Terceros**", basados en la doctrina de la ley del caso. En síntesis, plantearon que en la media en que el tribunal de instancia determinó que procedía desestimar la causa de acción de descorrer el velo corporativo en contra del señor Efrón, de EDSE y Golden cuando no hubiese una sentencia contra una persona jurídica que no se haya podido ejecutar por más de tres (3) años, procedía a su vez que el foro de primario desestimara la acción instada por Golden en su contra. Oportunamente, Golden presentó sus oposiciones a las mociones de desestimación el 25 de mayo de 2023. Alegó que, a diferencia de su caso, IVH realmente era un *alter ego* que no contaba con activos para cumplir con el reclamo contractual que adelantó en su "**Demanda Enmendada**", ni para responder por los daños que alegadamente habían ocasionado. Añadió que el señor Calderón manejaba a IVH, Pueblo y Holsum sin atención a sus personalidades jurídicas independientes y que éste pretendía rehuir de las responsabilidades de IVH, drenando a ésta de capital para su beneficio y el de las otras entidades que procuraba excluir del litigio.

Analizadas las mociones presentadas, el foro recurrido notificó el 26 de mayo de 2023, una *Resolución* en la cual declaró "No Ha Lugar" las solicitudes de desestimación solicitadas por los Terceros Demandados. Inconformes, el 12 de junio de 2023, presentaron solicitud de reconsideración, mediante la cual solicitaron, nuevamente, que se aplicara de forma uniforme la ley del caso a todas las partes o, en la alternativa, que se dejara sin efecto la desestimación de la causa de acción de descorrer el velo corporativo presentada en la "**Demanda Enmendada**". Golden, a su vez, presentó "**Oposición a Moción en Solicitud de Reconsideración**" el 6 de julio de 2023. Argumentó que el único fundamento de los Terceros

Demandados para solicitar la desestimación era que éstos mismos habían acatado la decisión tomada por el foro recurrido en la *Sentencia Parcial*, por lo que no enfrentaron las alegaciones en su contra a tenor con la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V. Evaluadas las posturas de las partes, el 23 de octubre de 2023, el TPI emitió y notificó una *Resolución* declarando "No Ha Lugar" la solicitud de reconsideración sin ulterior explicación.

En desacuerdo con tal proceder, el 21 de noviembre de 2023 los Peticionarios presentaron el recurso de *certiorari* ante nos, mediante el cual le imputaron al TPI la comisión del siguiente error:

ERRÓ EL TPI AL NO DESESTIMAR LA DEMANDA CONTRA TERCEROS AL AMPARO DE SU SENTENCIA PARCIAL Y LA DOCTRINA DE LA LEY DEL CASO.

El 20 de diciembre de 2023, los Recurridos presentaron su "**Memorando en Oposición a la Expedición del Auto de *Certiorari*"**. En la misma fecha, se le concedió un término de veinte (20) días al foro de instancia para que fundamentara la *Resolución* notificada el 26 de mayo de 2023. El 22 de diciembre de 2023, la Recurrida presentó "**Moción de Reconsideración y Solicitud para que se deje sin efecto Orden**" la cual fue declarada "No Ha Lugar" el 8 de enero de 2024.

En el ínterin, y en cumplimiento con nuestra *Resolución* de 20 de diciembre de 2023, el 5 de enero de 2024 el foro recurrido dictó *Resolución en cumplimiento con Orden del Tribunal de Apelaciones* e informó que acogió los argumentos esbozados por Golden en sus mociones en oposición a las desestimaciones y expuso que las alegaciones de la "**Demanda contra Terceros**" eran distinguibles de la causa de acción desestimada sobre descorrer el velo corporativo. A esos efectos, expuso que contra los Terceros Demandados se reclamaron daños por una solicitud de orden sobre prohibición de enajenar, se alegó que éstos actuaron de mala fe en las negociaciones contractuales fallidas que motivaron el presente litigio y se planteó que el señor Calderón manejaba IVH, Pueblo y Holsum como una sola entidad. En vista de lo anterior,

concluyó el foro *a quo* que, al tratarse de reclamaciones distinguibles, resultaba improcedente aplicar el mismo razonamiento expuesto en la *Sentencia Parcial*. Así las cosas, el 11 de enero de 2024, los Peticionarios presentaron "**Urgente Moción en Auxilio de Jurisdicción**". El 12 de enero de 2024, emitimos *Resolución* mediante la cual paralizamos los procedimientos, únicamente en cuanto al descubrimiento de prueba sobre la "**Demanda contra Terceros**" y le concedimos a las partes un plazo de diez (10) días para que expusieran su posición en torno a los argumentos detallados por el foro recurrido en su *Resolución* de 5 de enero de 2024.

El 22 de enero de 2024, Golden presentó "**Moción en Cumplimiento de Orden y Reiterando Oposición a la Expedición del Auto**", mientras que el 25 de enero de 2024, los Peticionarios presentaron "**Moción Informando Posición en torno a Argumentos del TPI**".

Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

**II.**

**A.**

La Ley Núm. 64 de 2009, según enmendada, conocida como la "Ley General de Corporaciones", 14 LPRA sec. 3501 *et seq.* (en adelante, "Ley Núm. 64-2009" o "Ley de Corporaciones"), "es el estatuto especial por virtud del cual se deben atender los cuestionamientos relativos a la existencia y vida jurídica de las corporaciones privadas". Eagle Security v. Efrón Dorado *et al.*, 2023 TSPR 5, 211 DPR ___ (2023). Es norma reiterada que una corporación debidamente organizada bajo el referido estatuto tiene su propia personalidad jurídica y su propio patrimonio, distinto al de la personalidad y patrimonio de sus accionistas, ya sean estos personas naturales o jurídicas. D.A.Co. v. Alturas Fl. Dev. Corp. y otro, 132 DPR 905, 924 (1993).

En nuestro ordenamiento jurídico se adoptó la doctrina de descorrer el velo corporativo, la cual, fue desarrollada jurisprudencialmente por los tribunales federales. El profesor Carlos Díaz Olivo describe la misma como

"un mecanismo de control que cierra el paso al abuso y utilización impropia de la figura corporativa". C.E. Díaz Olivo, Corporaciones*: tratado sobre derecho corporativo*, 2da ed. rev., Colombia, Ed. AlmaForte, 2022, pág. 118. Ello podría ocurrir "cuando una corporación toma el control de otra entidad, que usualmente desaparece y se demuestra que esa sustitución tiene propósitos ilegales, constituye una violación de política pública, se perpetuaría una injusticia o un fraude, o se incumpliría con una obligación". Rodríguez v. Bco. Gub. de Fom. P.R., 151 DPR 383, 398 (2000). De igual forma, una corporación puede ser el *alter ego* de un accionista cuando la identidad de ambas partes esté confundida a tal grado que la corporación no es en realidad una persona jurídica independiente y separada. Así, pues, nuestro más alto foro judicial ha reconocido que el análisis bajo esta doctrina requiere que se demuestren propósitos o intentos de cometer actos ilegales. Íd. Es por tal razón que la doctrina busca evitar la utilización indebida de la corporación como instrumento para perpetuar un fraude o una acción ilegal.  Díaz Olivo, *op. cit.* pág. 118.

Establecido lo anterior, la única forma en que un tribunal puede descartar la personalidad jurídica de una corporación para sujetar el patrimonio de ésta con el de sus accionistas, a los fines de que la corporación responda por las deudas y obligaciones de los accionistas, será en aquellos casos en que la corporación actúe meramente como un *alter ego* o instrumento económico pasivo de sus únicos accionistas, recibiendo estos exclusiva y personalmente los beneficios producidos por la gestión corporativa. Por lo tanto, "[l]a consecuencia de la aplicación de la doctrina de descorrer el velo corporativo es suspender la exención de responsabilidad que de ordinario asiste a los accionistas de una corporación con respecto a las deudas corporativas, para hacerlos responsables de estas". Díaz Olivo, *op. cit.* pág. 117.

Por otro lado, y como norma general, los accionistas, directores y oficiales de una corporación no vienen obligados a responder de manera personal por las obligaciones de ésta. Ahora bien, el Artículo 12.04 de la

Ley Núm. 64-2009, *supra*, establece ciertas excepciones en donde se les puede imponer responsabilidad personal a los oficiales, directores y accionistas por las deudas de una corporación. Íd., pág. 427. El precitado Artículo regula el procedimiento que los acreedores podrán seguir en estos casos, el cual expresamente dispone lo siguiente:

> **A.** Cuando los oficiales, directores o accionistas de cualquier corporación estén obligados a pagar las deudas, o cualquier parte de las deudas de la corporación, según lo dispuesto en esta Ley, cualquier acreedor podrá entablar una acción en contra de uno o más de ellos. En la demanda se consignará la reclamación en contra de la corporación y el fundamento por el cual el demandante espera recobrar de los demandados personalmente.
>
> **B.** No se entablará pleito alguno contra ningún oficial, director o accionista por deuda u obligación de la corporación de la cual es oficial, director o accionista, hasta que se dicte sentencia final en contra de la corporación, y que la ejecución de la misma permanezca insatisfecha ni después de tres (3) años a partir de la fecha de tal sentencia, y cualquier oficial, director o accionista podrá levantar cualquier defensa que la corporación hubiere podido levantar contra tal deuda u obligación. Este inciso (B) no aplicará a los pleitos que se entablen contra oficiales o directores de una corporación que estén en proceso de disolución por mala administración, en el ejercicio de sus funciones con arreglo al Capítulo IX de esta Ley. 14 LPRA sec. 3784.

De una lectura de las transcritas disposiciones estatutarias, se desprende que para que un demandante pueda instar una acción en contra de los directores, oficiales o accionistas de una corporación, por las deudas u obligaciones de ésta, debe contar con una sentencia previa dictada a su favor por el tribunal y en contra de la corporación, sin que haya podido ser ejecutada y antes de que expire el término de tres (3) años a partir de la dictada la sentencia. Satisfechas dichas exigencias, el demandante quedará legitimado para exigir el cumplimiento de las obligaciones de la corporación.

Ahora bien, el profesor Díaz Olivo explica que "las exigencias dispuestas en el Artículo 12.04 sólo aplican a aquellas obligaciones cuya responsabilidad la Ley [Núm. 64-2009, *supra*,] impone expresamente a un oficial, director o accionista". Díaz Olivo, *op. cit.*, pág. 427. Es decir, el Artículo 12.04(b), *supra*, únicamente aplica en aquellos casos dispuestos en los Artículos 4.07, 5.08, 5.22 y 9.12 de la Ley de Corporaciones, 14

LPRA secs. 2727, 2768, 2782 y 3012, respectivamente. *Véase además*, Lone Star Indus., Inc. v. Redwine, 757 F.2d 1544 (5th Cir.) (1985). Éstos se refieren a la responsabilidad de los directores u oficiales por publicar informes falsos sobre la corporación; de los accionistas por el pago de acciones parcialmente pagadas; a los directores por violaciones a la ley en el pago de dividendos o en la compra de acciones de la propia corporación; y de los accionistas por los activos distribuidos a ellos luego de disuelta la corporación. Íd.

De conformidad con lo anterior, si la responsabilidad del funcionario o del accionista no se deriva expresamente de la Ley Núm. 64-2009, *supra*, es decir, no se fundamenta en ninguno de los artículos antes mencionados, no son de aplicación las disposiciones del Artículo 12.04(b), *supra*. Díaz Olivo, o*p. cit.*, págs. 427-428. Por tanto, salvo dichos escenarios, cualquier demandante puede incoar una causa de acción en contra de los accionistas, oficiales o directores, incluyendo la de descorrer el velo corporativo, sin que sea indispensable obtener una sentencia a su favor.

**B.**

Es norma reiterada en nuestro acervo jurídico que "los derechos y obligaciones adjudicadas en el ámbito judicial, mediante dictamen firme, constituyen la ley del caso". MGMT. Adm. Servs. Corp. v. E.L.A., 152 DPR 599, 606 (2000) (citando a *In re*: Tormos Blandino, 135 DPR 573 (1994)). Esta doctrina, más que constituir un mandato inflexible, recoge la costumbre deseable de respetar como finales aquellas controversias sometidas, litigadas y decididas por un tribunal dentro de un caso. Sociedad Legal de Gananciales v. Pauneto, 130 DPR 749, 754 (1992). Ello aplica tanto a las controversias adjudicadas por tribunales de primera instancia como por tribunales apelativos. Berkan *et al.* v. Mead Johnson Nutrition, 204 DPR 183, 201 (2020). Es decir, los tribunales buscan evitar reexaminar asuntos que hayan sido considerados por cualquiera de los foros dentro de un mismo caso para velar por el trámite

ordenado y expedito de los litigios, así como promover la estabilidad y certeza del derecho. Íd., págs. 200-201.

No obstante, esta doctrina procede, solamente, cuando exista una decisión final de la controversia en sus méritos. Cacho Pérez v. Hatton Gotay y otros, 195 DPR 1, 10 (2016). Por consiguiente, las controversias previamente dirimidas y adjudicadas por el foro primario o por un tribunal apelativo no pueden reexaminarse. Íd., pág. 9. Es decir, dichos asuntos no pueden reevaluarse, pasado el periodo provisto para la reconsideración y para la revisión, **a menos que las determinaciones previas sean erróneas o puedan causar una grave injusticia**. *In re* Fernández Díaz, 172 DPR 38, 43-44 (2007).

El Tribunal Supremo ha dicho que los Tribunales de Primera Instancia "deben realizar el esfuerzo máximo posible por evitar la emisión de dictámenes contradictorios e inconsistentes". Núñez Borges v. Pauneto Rivera, 130 DPR 749, 755 (1992). Así, se garantiza un trámite ordenado de los litigios, y la estabilidad y la certeza de los derechos y obligaciones de las partes. En resumen, las órdenes y resoluciones emitidas por un tribunal, mediante las cuales resuelve en los méritos el asunto traído a su atención, se consideran finales y firmes, convirtiéndolos en la ley del caso, una vez haya transcurrido el periodo provisto para la reconsideración y para la revisión por un tribunal de mayor jerarquía, sin que éstas sean modificadas o revocadas.

**III.**

En el presente recurso, nos corresponde determinar si erró el foro de instancia al no desestimar la "**Demanda contra Terceros**" presentada por los Recurridos, a raíz de la determinación de la *Sentencia Parcial* emitida el 21 de abril de 2023 y la doctrina de la ley del caso. Veamos.

Surge de los acápites anteriores del presente dictamen, que el foro recurrido emitió una *Sentencia Parcial* en la cual desestimó la causa de acción que perseguía descorrer el velo corporativo, según acumulada en la "**Demanda Enmendada**". Allí, IVH solicitó al foro de instancia que se

descorriera el velo corporativo de Golden y EDSE. Ello fundamentado en que, presuntamente, el señor Efrón utilizó a dichas compañías como su *alter ego* para provocar el incumplimiento de contrato entre Golden e IVH. El TPI determinó que dicha causa de acción fue presentada prematuramente, pues concluyó que IVH no había cumplido con lo dispuesto en el Artículo 12.04(b) de la Ley de Corporaciones, *supra*. Es decir, IVH no contaba con una sentencia a su favor que estableciera una obligación o deuda por parte de EDSE y del señor Efrón y, por tanto, no había transcurrido el término de tres (3) años prescrito en el aludido Artículo durante el cual no hubiese podido ejecutarse la misma.

Amparado en dicha determinación, IVH solicitó la desestimación de la causa de acción de descorrer el velo corporativo presentada en su contra en la "**Demanda contra Terceros**". Analizadas las posturas de las partes, el foro *a quo* denegó la solicitud desestimatoria. Fundamentó su decisión en que las causas de acción de la "**Demanda Enmendada**" y la "**Demanda contra Terceros**" sobre descorrer el velo corporativo eran distinguibles, por lo que resultaba improcedente aplicar el mismo razonamiento expuesto en la *Sentencia Parcial*. Asimismo, acogió los argumentos esbozados en la oposición a la desestimación presentada por los Peticionarios. En síntesis, en la mencionada oposición, Golden destacó que los Terceros Demandados no formalizaron una moción de desestimación que cumpliera con la reglamentación procesal, ni confrontaron las alegaciones particulares de la "**Demanda contra Terceros**".

Conforme lo dispuesto anteriormente, el Artículo 12.04 de la Ley Núm. 64-2009, *supra*, **únicamente** aplica a aquellas obligaciones que expresamente la ley le impone la responsabilidad de cumplimiento a un oficial, director u accionista de la corporación. Por tanto, de dicha responsabilidad no derivarse de la Ley de Corporaciones, *supra*, no será necesario el cumplimiento de los requisitos establecidos en el inciso b del Artículo 12.04, *supra*. En el presente caso, la causa de acción de descorrer el velo corporativo presentada por los Recurridos no está comprendida en

ninguno de los Artículos 4.07, 5.08, 5.22 y 9.12 de la Ley Núm. 64-2009, *supra*. Por consiguiente, determinamos que, como la presunta responsabilidad alegada por Golden, según expuesto en la "**Demanda contra Terceros**", no se deriva expresamente de la Ley de Corporaciones, *supra*, no procede la aplicación del Artículo 12.04(b) del mencionado estatuto.

Recordemos que la "**Demanda contra Terceros**" incluyó una causa de acción de descorrer el velo corporativo, así como una de daños y perjuicios en contra del señor Calderón, Holsum y Pueblo. En sus alegaciones, el Recurrido sostuvo que:

34. Existe perfecta identidad de accionistas y gerencia entre Isla Verde Holdings, Pueblo y Holsum. Las tres entidades tienen un solo director y accionista: Calderón. Calderón controla todos los asuntos corporativos de Isla Verde Holdings, Pueblo y Holsum. Calderón utiliza los activos de Isla Verde Holdings como los suyos propios, así como también lo hace con los activos de Holsum y de Pueblo. Calderón, Isla Verde, Pueblo y Holsum mezclan activos entre entidades.

35. El cliente principal de Holsum es Pueblo y entre estas, Calderón e Isla Verde Holdings se entremezclan los dineros, las fuentes de financiamiento y las contribuciones de capital. Para proteger este esquema de alter egos corporativos, todas utilizan los mismos contables y auditores externos.

36. Además, existen cuentas por cobrar y por pagar recíprocas entre Calderón, Pueblo, Holsum e Isla Verde Holdings. Holsum le provee capital a Pueblo y a Isla Verde Holdings. Calderón le provee capital a las tres entidades, indistintamente. Durante el año fiscal 2017 y el año fiscal 2018, Holsum hizo aportaciones de capital a Pueblo de $2,516,676 y de $1,378,251, respetivamente.

37. Por su parte, en los años fiscales 2017 y 2018 Holsum le pagó dividendos a Calderón por la suma de $2,000,000.00 y $4,300,000.00, respectivamente, dinero que luego fue utilizado por Calderón para ficticiamente capitalizar a Isla Verde Holdings con el propósito de dar la impresión al Banco Santander que tenía capital. Posteriormente, por información y/o creencia Calderón ha retirado todo o parte de ese dinero para su uso personal o de Holsum o Pueblo.[2]

Asimismo, expuso que el señor Calderón tuvo un rol central en la transacción objeto de este caso, en aras de beneficiarse él y todas las entidades que controla. Añadió que IVH realmente es un *alter ego* que no tiene activos para responder por los daños causados por la orden de

---

[2] *Véase*, Entrada Núm. 163 de SUMAC.

prohibición de enajenar ilegalmente obtenida en contra de Golden y que, como entidad única, no tiene nada que perder, por ser un fantasma corporativo controlado por el señor Calderón, por Pueblo y por Holsum, quienes, según alegado, actuaron de forma dolosa y negligente durante el curso de negociación de la transacción fallida. Asimismo, arguyó que dichas entidades, en realidad, operan como una sola, tienen un solo dueño –el señor Calderón– los mismos empleados, iguales contables y flujo de dinero recíproco. Por lo que, tanto el señor Calderón, como Pueblo y Holsum pretenden escudarse detrás de la separabilidad corporativa para rehuir de los actos constitutivos de daños y perjuicios alegadamente ocasionados.

Debido a que, al igual que en la "**Demanda Enmendada**", la causa de acción de descorrer el velo corporativo de la "**Demanda contra Tercero**" **no** está comprendida en los Artículos 4.07, 5.08, 5.22 y 9.12 de la Ley de Corporaciones, *supra*, no procede la desestimación de la causa de acción de descorrer el velo corporativo incoada por Golden amparada en las disposiciones del Artículo 12.04 de la Ley de Corporaciones, *supra*. Así pues, concluimos expresamente que la determinación del foro de instancia, en cuanto a que la causa de acción sobre la doctrina de descorrer el velo corporativo acumulada en la "**Demanda Enmendada**" fue presentada prematuramente es errónea en derecho, pues tomando como ciertas las alegaciones incorporadas en la misma, las disposiciones del Artículo 12.04 de la Ley de Corporaciones, *supra*, no les son extensivas. Repetimos, la aplicabilidad de dicho Artículo se da en ciertos escenarios contemplados en el estatuto, por lo que, en ausencia de alguno de ellos, no es necesario esperar a que transcurra el plazo de tres (3) años sin que una sentencia en que se imponga responsabilidad por cualquier de dichos escenarios pueda ejecutarse.

En vista de ello, no aplica la doctrina de la ley del caso a la moción de desestimación presentada por los Terceros Demandados. Recuérdese que, si bien los asuntos resueltos por los foros judiciales no pueden

reevaluarse pasado el periodo provisto para la reconsideración y para la revisión, no es menos cierto que cuando **dichas determinaciones previas son erróneas o pueden causar una grave injusticia sea hace indispensable evaluarlas y, en los casos en que amerite, no aplicarlas irrestrictamente**. *In re* Fernández Díaz, *supra*, págs. 43-44. Por lo tanto, colegimos que no erró el foro primario al denegar la moción de desestimación presentada por los Terceros Demandados, puesto que no es de aplicación el Artículo 12.04 de la Ley de Corporaciones, *supra*, al caso de autos. Ninguna de las causas de acción presentadas para que se descorra el velo corporativo está fundamentada en las disposiciones de los Artículos 4.07, 5.08, 5.22 y 9.12 del estatuto.

Después de todo, al momento de una parte solicitar una moción de desestimación por dejar de exponer una reclamación que justifique la concesión de un remedio, el tribunal está llamado a dar por ciertos los hechos bien alegados en la demanda. Asimismo, y aun interpretando la demanda lo más liberalmente a su favor, ésta no será desestimada "a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación". Pressure Vessels PR. v. Empire Gas P.R., 137 DPR 497, 505 (1994).

En las mociones de desestimación, los Terceros Demandados únicamente se limitaron a argumentar la aplicación de la doctrina de la ley del caso, sin más. No nos cabe duda de que la "**Demanda contra Terceros**" incorpora unas alegaciones que deben ser objeto de un descubrimiento de prueba que permita establecer si aplica o no la doctrina de descorrer el velo corporativo en contra de los Peticionarios. Ello pues, recordemos que la doctrina busca evitar la utilización indebida de la corporación como instrumento para perpetuar un fraude o una acción ilegal. Eso es precisamente lo que se alegó en la "**Demanda contra Terceros**". La utilización de una corporación por parte de un accionista cuando la

identidad de ambas partes está confundida a tal grado que la corporación no es en realidad una persona jurídica independiente y separada.

Así pues, sostenemos que no erró el foro recurrido al declarar "No Ha Lugar" las mociones de desestimación.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte de la presente *Sentencia*, *expedimos* y *confirmamos* la *Resolución* recurrida. En atención a lo anterior, se devuelve el caso al foro de instancia y se ordena la continuación de los procedimientos.

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones